THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| 3 DIMENSIONAL CONTRACTORS, INC.; BENZER DEVELOPMENT SOLUTIONS, LLC; VINCENT BLACKMORE; and DANYALE BLACKMORE,<br><br>Plaintiffs,<br><br>v.<br><br>UTAH ASSOCIATION OF MUNICIPAL POWER SYSTEMS; HURRICANE CITY; DAVID IMLAY; LANCE GIFFORD; and JOHN and JANE DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS**<br><br><br>Case No. 4:22-cv-00045-DN<br><br>District Judge David Nuffer |

Plaintiffs assert claims against Defendants under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 for violation of substantive due process, civil conspiracy, and failure to train and supervise.[1] Plaintiffs allege that Defendants misrepresented and withheld material information regarding the existence of a guy-anchor easement affecting Lot 55 of Zions Gate Estates Phase 2 to force Plaintiffs to pay for a self-supporting utility pole after construction of a home on the lot was substantially complete.[2]

Defendant Utah Association of Municipal Power Systems ("UAMPS") seeks dismissal of Plaintiffs' Complaint arguing that Plaintiffs Vincent and Danyale Blackmore (the "Blackmores") lack standing, and that Plaintiffs' claims are barred under multiple principles of res judicata

---

[1] Complaint ¶¶ 113-174 at 21-31, docket no. 2, filed July 19, 2022.

[2] *Id*. ¶ 34 at 9, ¶¶ 39-44 at 10, ¶ 51 at 11, ¶¶ 54-74 at 12-15, ¶¶ 77-86 at 15-16, ¶¶ 88-89 at 17, ¶¶ 91-98 at 17-18, ¶¶ 101-108 at 19-20, ¶¶ 111-112 at 20-21, ¶¶ 123-126 at 23, ¶ 128 at 24, ¶¶ 131-135 at 24-25, ¶¶ 142-147 at 26, ¶¶ 150-152 at 27, ¶¶ 161-165 at 28-30.

("UAMPS's Motion").[3] Defendants Hurricane City, David Imlay, and Lance Gifford (the "City Defendants") also seek dismissal of the Complaint arguing that the Blackmores and Plaintiff 3 Dimensional Contractors, Inc. ("3D") lack standing, and that Plaintiffs' claims are barred under multiple principles of res judicata ("City Defendants' Motion").[4]

Plaintiffs' Complaint fails to allege sufficient facts to establish the Blackmores' standing to assert their claims. Additionally, 3D and Plaintiff Benzer Development Solutions, LLC's ("Benzer") claims are barred. Therefore, UAMPS's and the City Defendants' Motions[5] are GRANTED. The Blackmores' claims are DISMISSED without prejudice for lack of subject matter jurisdiction. 3D and Benzer's claims are DISMISSED with prejudice.

**Contents**

BACKGROUND ................................................................................................................ 3
DISCUSSION .................................................................................................................... 8
    The Complaint fails to sufficiently allege the Blackmores' standing, but does sufficiently
        allege 3D's standing ............................................................................................. 8
        Legal Standards .................................................................................................... 8
        The Complaint fails to sufficiently allege the Blackmores suffered an injury in
            fact and that the Blackmores have prudential standing ............................ 10
        The Complaint sufficiently alleges 3D's standing ................................................ 14
    3D and Benzer's claims against UAMPS are barred because they were compulsory
        counterclaims in the First Lawsuit ...................................................................... 15
    Claim preclusion bars 3D and Benzer's claims against UAMPS, but not 3D and Benzer's
        claims against the City Defendants ...................................................................... 18
        Legal Standards .................................................................................................... 19
        Claim preclusion bars 3D and Benzer's claims against UAMPS ........................ 20
        Claim preclusion does not bar 3D and Benzer's claims against the City
            Defendants ............................................................................................... 21
    Issue preclusion bars 3D and Benzer's claims against all Defendants ............................ 24
ORDER .............................................................................................................................. 26

---

[3] Motion to Dismiss Claims Against Defendant Utah Associated Municipal Power Systems ("UAMPS's Motion") at 11-19, docket no. 14, filed Oct. 11, 2022. UAMPS also argues that dismissal is appropriate under the doctrine of abstention and for Plaintiffs' failure to state a claim. *Id*. at 19-26. These alternative arguments are not addressed because the threshold issues of standing and res judicata are dispositive of UAMPS's Motion.

[4] Hurricane City, David Imlay, and Lance Gifford Rule 12(b)(6) Motion to Dismiss ("City Defendants' Motion") at 4-12, docket no. 26, filed Feb. 15, 2023. The City Defendants also argue that dismissal is appropriate for Plaintiffs' failure to state a claim. *Id*. at 12-14. This alternative argument is not addressed because the threshold issues of standing and res judicata are dispositive of the City Defendants' Motion.

[5] Docket no. 14, filed Oct. 11, 2022; docket no. 26, filed Feb. 15, 2023.

## BACKGROUND[6]

This is the third lawsuit involving the construction of a home that encroached upon a utility easement at Lot 55 of Zions Gate Estates Phase 2. The First Lawsuit was initiated by UAMPS in Utah state court on December 17, 2018.[7] UAMPS asserted claims against 3D and Benzer for declaratory judgment regarding the validity of UAMPS's easement, and for trespass, nuisance, and permanent injunction regarding the home's construction on the lot.[8] 3D and Benzer raised several affirmative defenses, including: bad faith; abuse of power; unclean hands; and estoppel.[9] They affirmatively alleged that UAMPS acted to obtain leverage to "tax" 3D and Benzer with the cost of a new utility pole.[10] 3D and Benzer also sought to allocate fault to Hurricane City based on alleged material representations and omissions made by David Imlay, a Hurricane City employee.[11] They alleged that UAMPS and Hurricane City acted in concert to

---

[6] This Background is taken from Plaintiff's Complaint, as well as the record and documents of the prior related State Court cases referenced in the Complaint. The Complaint's well-pleaded factual allegations are viewed as true for purposes of UAMPS's and the City Defendants' Motions under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995). And judicial notice is taken of the public record and documents of the State Court cases. Fed. R. Evid. 201; *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). The public record and documents of the State Court cases are considered only to show their contents, not to prove the truth of the matters asserted therein. *Tal*, 453 F.3d at 1264 n.24.

[7] *Utah Association of Municipal Power Systems v. 3 Dimensional Contractors, Inc. et al.*, No. 180500577 (5th Dist. Crt. State of Utah) ("First Lawsuit").

[8] Amended Complaint in First Lawsuit ¶¶ 32-59 at 7-11, docket no. 14-1, filed Oct. 11, 2022. UAMPS initially named Mr. Blackmore as a defendant in the First Lawsuit. *Id*. at 1, ¶ 3 at 2. Mr. Blackmore moved to dismiss UAMPS's claims against him arguing that he could not be held personally liable for his involvement in the home's construction. Motion to Dismiss Defendant Vincent Blackmore in First Lawsuit, docket no. 14-3, filed Oct. 11, 2022. The parties ultimately stipulated to the dismissal without prejudice of UAMPS's claims against Mr. Blackmore. Stipulation to Dismissal of Claims Against Defendant Vincent Blackmore Without Prejudice in First Lawsuit, docket no. 14-4, filed Oct. 11, 2022.

[9] Amended Answer and Counterclaim in First Lawsuit ¶¶ 5-8 at 8-9, docket no. 14-2, filed Oct. 11, 2022; Second Amended Answer and Counterclaim in First Lawsuit ¶¶ 6-8 at 9, docket no. 14-6, filed Oct. 11, 2022.

[10] Amended Answer and Counterclaim in First Lawsuit ¶¶ 5-6 at 8-9; Second Amended Answer and Counterclaim in First Lawsuit ¶ 6 at 9.

[11] Amended Answer and Counterclaim in First Lawsuit ¶ 12 at 10; Second Amended Answer and Counterclaim in First Lawsuit ¶ 12 at 10.

violate 3D and Benzer's property and constitutional rights.[12] Additionally, 3D and Benzer asserted counterclaims against UAMPS for civil conspiracy, trespass, declaratory judgment, and permanent injunction.[13]

In the First Lawsuit, State Court Judge Eric A. Ludlow dismissed 3D and Benzer's civil conspiracy counterclaim without prejudice for failure to state a claim.[14] 3D and Benzer chose to not pursue their trespass counterclaim by filing an amended counterclaim that did not include the trespass claim.[15] And on summary judgment, Judge Ludlow dismissed with prejudice 3D and Benzer's counterclaims for declaratory judgment and permanent injunction.[16] Judge Ludlow also denied 3D and Benzer's estoppel defense on summary judgment.[17]

Judge Ludlow concluded that UAMPS (and Mr. Imlay) did not make any inconsistent admission, statements, or acts regarding the home's encroachment upon UAMPS's easement.[18] Judge Ludlow further concluded that 3D and Benzer's reliance on any representation of UAMPS (or Mr. Imlay) was unreasonable because 3D and Benzer had constructive knowledge and inquiry notice of UAMPS's easement.[19] Judge Ludlow ultimately granted judgment in favor of

---

[12] Amended Answer and Counterclaim in First Lawsuit ¶ 13 at 10-11; Second Amended Answer and Counterclaim in First Lawsuit ¶ 13 at 10-11.

[13] Amended Answer and Counterclaim in First Lawsuit ¶¶ 6-28 at 13-16; Second Amended Answer and Counterclaim in First Lawsuit ¶¶ 7-22 at 13-15.

[14] Order Dismissing Civil Conspiracy Claim in First Lawsuit, docket no. 14-8, filed Oct. 11, 2022.

[15] Second Amended Answer and Counterclaim in First Lawsuit.

[16] Findings of Fact and Conclusions of Law (Motion for Summary Judgment on Defendants' Amended Counterclaim) in First Lawsuit, docket no. 14-9, filed Oct. 11, 2022.

[17] *Id.* ¶¶ 1-13 at 11-16.

[18] *Id.* ¶¶ 14-26 at 16-22.

[19] Findings of Fact and Conclusions of Law (Motion for Summary Judgment on Defendants' Eighth Affirmative Defense) in First Lawsuit, docket no. 14-7, filed Oct. 11, 2022.

UAMPS and against 3D and Benzer on UAMPS's claims for declaratory judgment, trespass, and permanent injunction.[20] Final judgment entered in the First Lawsuit on November 22, 2021.[21]

On May 1, 2020, while the First Lawsuit was pending, 3D and Benzer initiated the Second Lawsuit in Utah state court.[22] 3D and Benzer asserted a claim for promissory estoppel against UAMPS and Hurricane City, and sought damages for being unable to refinance or sell the home at Lot 55; lost rental income; and attorneys' fees incurred in the First Lawsuit and Second Lawsuit.[23] 3D and Benzer alleged that they reasonably relied on representations regarding UAMPS's easement (made by UAMPS and Hurricane City through David Imlay and others) when deciding to continue and complete construction of the home.[24] 3D and Benzer alleged that UAMPS and Hurricane City acted in concert to misrepresent and omit material information regarding the home's encroachment on UAMPS's easement to force 3D and Benzer to pay for a self-supporting utility pole after construction of the home was substantially

---

[20] Final Judgment in First Lawsuit, docket no. 14-10, filed Oct. 11, 2022. UAMPS's claim for nuisance against 3D and Benzer was dismissed as moot. *Id*. ¶ 6 at 3.

[21] *Id*. 3D and Benzer filed a notice of appeal in the First Lawsuit on December 20, 2021. Notice of Appeal in First Lawsuit, docket no. 14-11, filed Oct. 11, 2022.

[22] *3 Dimensional Contractors, Inc. et al. v. City of Hurricane et al.*, No. 200500230 (5th Dist. Crt. State of Utah) ("Second Lawsuit").

[23] Complaint in Second Lawsuit ¶¶ 70-86 at 14-16, docket no. 14-12, filed Oct. 11, 2022. The Complaint in the Second Lawsuit does not specifically (or generally) identify the claim 3D and Benzer asserted against UAMPS and Hurricane City. Rather, it includes the heading "Cause of Action" under which 3D and Benzer allege UAMPS and Hurricane City are liable for damages. *Id*. 3D and Benzer later clarified that their sole claim in the Second Lawsuit was for promissory estoppel. Memorandum Decision and Order on Motions to Dismiss in Second Lawsuit at 4, docket no. 26-5, filed Feb. 15, 2023.

[24] *Id*. David Imlay was not a named defendant in the Second Lawsuit. However, the Complaint in the Second Lawsuit repeatedly referred to Mr. Imlay as "Defendant David Imlay" and "Defendant Imlay." *Id*. ¶¶ 10-11 at 3, ¶¶ 25-27 at 5-6, ¶¶ 29-30 at 6-7, ¶ 33 at 7, ¶¶ 35-39 at 8-9, ¶ 41 at 9, ¶ 49 at 10-11, ¶ 51 at 11, ¶ 55 at 11, ¶ 64 at 13, ¶¶ 72-73 at 14.

complete.[25] 3D and Benzer further alleged that UAMPS and Hurricane City's actions (including the First Lawsuit) constitute bad faith and an abuse of power.[26]

UAMPS and Hurricane City separately moved to dismiss the Second Lawsuit arguing, among other things, that 3D and Benzer's claim was compulsory in the First Lawsuit, and that the claim was barred by Utah's Governmental Immunity Act ("UGIA").[27] In response, 3D and Benzer moved to consolidate the Second Lawsuit with the First Lawsuit.[28] UAMPS opposed the motion to consolidate, arguing that consolidation would improperly circumvent the procedural rules regarding compulsory counterclaims and amending pleadings, as well as the UGIA.[29] And in response to these arguments, 3D and Benzer moved to amend their counterclaim in the First Lawsuit to include the promissory estoppel claim asserted in the Second Lawsuit.[30] 3D and Benzer also voluntarily dismissed without prejudice its claim against Hurricane City in the Second Lawsuit.[31]

Judge Ludlow denied 3D and Benzer's motion to consolidate, concluding that consolidation would violate Utah's procedural rules regarding compulsory counterclaims and amending pleadings.[32] Judge Ludlow expressly determined that the Second Lawsuit's claim

---

[25] *Id*. ¶¶ 10-11 at 3, ¶¶ 14-15 at 4, ¶¶ 22-23 at 5, ¶¶ 26-64 at 6-13, ¶ 67 at 13, ¶ 69 at 13, ¶¶ 71-83 at 14-16.

[26] *Id*. ¶ 63 at 13, ¶¶ 84-85 at 16.

[27] Motion to Dismiss Claims Against Defendant Utah Associated Municipal Power Systems in Second Lawsuit, docket no. 14-13, filed Oct. 11, 2022; City of Hurricane's Motion to Dismiss in Second Lawsuit, docket no. 26-3, filed Feb. 15, 2023.

[28] Motion for Consolidation of Proceedings in First Lawsuit, docket no. 14-14, filed Oct. 11, 2022.

[29] Order on Motion for Consolidation of Proceedings in First Lawsuit ¶ 21 at 5, docket no. 14-15, filed Oct. 11, 2022.

[30] *Id*. ¶ 22 at 5.

[31] Notice of Dismissal Pursuant to Rule 41(a) in Second Lawsuit, docket no. 26-4, filed Feb. 15, 2023. Judge Ludlow recognized that the voluntary dismissal of Hurricane City from the Second Lawsuit provided support for the motion to consolidate because following the dismissal, the parties in First Lawsuit and Second Lawsuit became identical. Order on Motion for Consolidation of Proceedings in First Lawsuit ¶ 3 at 6-7.

[32] Order on Motion for Consolidation of Proceedings in First Lawsuit ¶¶ 4-35 at 7-20.

matured prior to 3D and Benzer's answer in the First Lawsuit,[33] and was a compulsory counterclaim in the First Lawsuit.[34] Additionally, Judge Ludlow determined that 3D and Benzer could not satisfy the requirements for amending pleadings because they were untimely and had no justification or "good explanation" for their delay in raising the promissory estoppel claim.[35] Judge Ludlow also concluded that consolidation would cause UAMPS substantive prejudice[36] and circumvent the UGIA.[37]

Following Judge Ludlow's denial of 3D and Benzer's motion to consolidate, State Court Judge John J. Walton granted UAMPS's motion to dismiss the Second Lawsuit.[38] Judge Walton concluded that UAMPS was immune from suit and dismissed 3D and Benzer's promissory estoppel claim with prejudice.[39] Judge Walton also determined that Hurricane City's motion to dismiss the Second Lawsuit was moot based on 3D and Benzer's voluntary dismissal.[40] Final judgment entered in the Second Lawsuit on July 6, 2021.[41]

On July 19, 2022, Plaintiffs initiated this case.[42] Plaintiffs assert claims against Defendant under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 for violation of substantive due process, civil conspiracy, failure to train and supervise.[43]

---

[33] *Id*. ¶¶ 11-16 at 9-12.

[34] *Id*. ¶ 17 at 12.

[35] *Id*. ¶¶ 27-31 at 16-18.

[36] *Id*. ¶¶ 18-21 at 13-14, ¶¶ 41-46 at 22-24.

[37] *Id*. ¶¶ 36-40 at 20-22.

[38] Memorandum Decision and Order on Motions to Dismiss in Second Lawsuit, docket no. 14-16, filed Oct. 11, 2022.

[39] *Id*. at 4-8.

[40] *Id*. at 8-9.

[41] Final Judgment in Second Lawsuit, docket no. 14-17, filed Oct. 11, 2022.

[42] Complaint.

[43] *Id*. ¶¶ 113-174 at 21-31.

Plaintiffs allege (just as 3D and Benzer alleged in the First Lawsuit and Second Lawsuit) that Defendants misrepresented and withheld material information regarding the existence of UAMPS's easement affecting Lot 55 to force Plaintiffs to pay for a self-supporting utility pole after construction of the home on the lot was substantially complete.[44]

Defendants seek dismissal of Plaintiffs' Complaint for, among other things, lack of standing (regarding the Blackmores and 3D's claims) and res judicata (regarding 3D and Benzer's claims).[45]

## DISCUSSION

### The Complaint fails to sufficiently allege the Blackmores' standing, but does sufficiently allege 3D's standing

**Legal Standards**

"Federal courts are courts of limited jurisdiction."[46] "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"[47] Therefore, "[i]t is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]"[48]

"Article III of the [United States] Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"[49] "One element of the case-or-controversy requirement is that

---

[44] *Id.* ¶ 34 at 9, ¶¶ 39-44 at 10, ¶ 51 at 11, ¶¶ 54-74 at 12-15, ¶¶ 77-86 at 15-16, ¶¶ 88-89 at 17, ¶¶ 91-98 at 17-18, ¶¶ 101-108 at 19-20, ¶¶ 111-112 at 20-21, ¶¶ 123-126 at 23, ¶ 128 at 24, ¶¶ 131-135 at 24-25, ¶¶ 142-147 at 26, ¶¶ 150-152 at 27, ¶¶ 161-165 at 28-30.

[45] UAMPS's Motion; City Defendants' Motion.

[46] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[47] *Id.* (internal citations omitted).

[48] *Id.* (internal citations omitted).

[49] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

plaintiffs must establish that they have standing to sue."[50] "This is the threshold question in every federal case[.]"[51]

> The United States Supreme Court has held:

> [T]he irreducible constitutional minimum of standing contains three elements[:] First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[52]

However, "[s]atisfaction of constitutional standing requirements . . . is not the end of the inquiry."[53] A plaintiff must also establish the requirements of prudential standing, one of which is "that the plaintiff generally must assert his [or her] own legal rights and interest and cannot rest [the] claim to relief on the legal rights or interest of third parties."[54]

"For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[55] But "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."[56] Conclusory allegations are not

---

[50] *Id.* (internal quotations omitted).

[51] *Seldin*, 422 U.S. at 500.

[52] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, citations, and punctuation omitted).

[53] *Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006).

[54] *Id.* (quoting *Franchise Tax Bd. of Cal. V. Alcan Aluminum, Ltd.*, 493 U.S. 331, 336 (1990)).

[55] *Seldin*, 422 U.S. at 501.

[56] *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990)).

considered,[57] and the complaint's legal conclusions and opinions are not accepted, even if they are couched as facts.[58]

**The Complaint fails to sufficiently allege the Blackmores suffered an injury in fact and that the Blackmores have prudential standing**

UAMPS and the City Defendants argue that Plaintiffs' Complaint fails to allege sufficient facts to allege the Blackmores suffered an injury in fact for purposes of constitutional standing and fails to allege the Blackmores' prudential standing.[59] UAMPS and the City Defendants are correct.

The Complaint begins with a section entitled "Preliminary Statement."[60] This section is not comprised of numbered paragraph allegations. Rather, it is a vague and generalized summary of the numbered paragraph allegations in the Complaint's sections that follow. The allegations in the "Preliminary Statement" do not make any distinctions among Plaintiffs. The section includes the follow generalized allegations:

- "Plaintiffs" were the developers of the Zions Gate subdivision in Hurricane City, and had received a building permit to construct a home on Lot 55;[61]

- "Plaintiffs" relied on Defendants' representations regarding UAMPS's easement on Lot 55 when deciding to continue construction of the home on the lot;[62] and

- Defendants conspired to deny "Plaintiffs" the basic approvals needed to complete and sell the home, as well as approvals for the next phase of the Zions Gate development.[63]

---

[57] *Cory*, 583 F.3d at 1244.

[58] *Twombly*, 550 U.S. at 555; *Zavaras*, 63 F.3d at 972.

[59] UAMPS's Motion at 11-13; City Defendants' Motion at 10-12.

[60] Complaint at 2-4.

[61] *Id*. at 2.

[62] *Id*. at 3.

[63] *Id*. at 3-4.

It is not until the numbered paragraph allegations in the Complaint's later sections that Plaintiffs provide more specificity to their allegations, including the interests of the Blackmores in this litigation. The Complaint alleges that the Blackmores are shareholders of 3D and co-owners of Benzer.[64] Benzer is the recorded owner of Lot 55.[65] And "through 3D and/or Benzer," the Blackmores have an ownership interest in multiple parcels of property in the Zions Gate Estates Phase 2 subdivision.[66]

The Complaint's first cause of action alleges that Defendants violated Plaintiffs' substantive due process rights by purposefully omitting vital public information when Defendants chose to replace the utility pole on Lot 55.[67] The Complaint's second cause of action alleges that Defendants violated Plaintiffs' substantive due process rights by conspiring to force Plaintiffs to pay for the utility pole on Lot 55 under threat of withholding approvals for utilities and occupancy to the home on Lot 55, and by withholding approval for the Zions Gate Estates Phase 4 subdivision.[68] The Complaint's third cause of action alleges that UAMPS and Hurricane City failed to properly supervise and train Mr. Imlay and Mr. Gifford in carrying out their duties and responsibilities to ensure no constitutional violations occurred to Plaintiffs.[69] And the Complaint alleges that Defendants' conduct injured and damaged Plaintiffs by delaying the sales and development of Plaintiffs' properties.[70]

---

[64] *Id.* ¶ 7 at 5, ¶¶ 9-10 at 5-6.

[65] *Id.* ¶ 6 at 5, ¶ 28 at 9.

[66] *Id.* ¶¶ 9-10 at 5-6.

[67] *Id.* ¶¶ 113-158 at 21-28.

[68] *Id.* ¶¶ 159-168 at 30.

[69] *Id.* ¶¶ 169-174 at 30-31.

[70] *Id.* ¶¶ 157-158 at 28, ¶ 175 at 32.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."[71] "An individual shareholder, by virtue of his [or her] ownership of shares, does not own the corporation's assets[.]"[72] And "[i]n general, the law is that conduct which harms a corporation confers standing on the corporation, not its shareholders."[73]

This "shareholder standing rule is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment."[74] "There is, however, an exception to this rule where the actions of [a] third party that injure the corporation also cause injury to the shareholder which is unique to himself or herself as a shareholder of the corporation and not suffered by the other shareholders."[75] Thus, standing may exist for "a shareholder with a direct, personal interest in a cause of action . . . even if the corporation's rights are also implicated."[76] These legal principles for corporations also apply to the ability of a member of a Utah limited liability company to maintain an action against a third party.[77]

Plaintiffs' Complaint fails to allege sufficient facts to demonstrate that the Blackmores personally suffered any injury or damages from Defendant's alleged conduct. "As a general matter, shareholders suffer injury in the Article III sense when the corporation incurs significant

---

[71] *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).

[72] *Id*. at 475.

[73] *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010); *see also Bio-Thrust, Inc. v. Div. of Corps.*, 80 P.3d 164, 167 (Utah Ct. App. 2003).

[74] *Foster*, 596 F.3d at 756-757 (internal quotations and punctuation omitted).

[75] *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002); *see also Bio-Thrust, Inc.*, 80 P.3d at 167.

[76] *Foster*, 596 F.3d at 757; *see also Bio-Thrust, Inc.*, 80 P.3d at 167.

[77] Utah Code Ann. §§ 48-3a-104(1), -801(2), -802; *c.f. CFD Payson, LLC v. Christensen*, 361 P.3d 145, 148 (Utah Ct. App. 2015).

harm, reducing the return on their investment and lowering the value of their stockholdings."[78] The Complaint contains no allegations that the Blackmores incurred such harm. Nor does the Complaint allege any direct, personal interest of the Blackmores in the causes of action against Defendants (beyond the Blackmores' interests as shareholders of 3D and members of Benzer).

The Complaint references the rights and duties owed to property owners,[79] and alleges numerous communications between Defendants and the Blackmores.[80] But the Complaint contains no allegations that the Blackmores' involvement or actions were in their personal capacity. The Complaint does not allege that the Blackmores are (or ever were) the recorded owners of Lot 55, or that the Blackmores are (or ever were) the recorded owners of any property affected by Defendants' alleged conduct. To the contrary, the Complaint alleges the Blackmores' interest in the affected properties (and this litigation) is only "through 3D and/or Benzer."[81]

The injuries and damages alleged in the Complaint are those of 3D and Benzer as the owners and developers of the properties affected by Defendants' alleged conduct.[82] These injuries and damages do not flow to individual shareholders or members, such as the Blackmores, for purposes of standing. Therefore, the Complaint fails to allege the Blackmores suffered an injury in fact for purposes of constitutional standing and fails to establish the Blackmores' prudential standing.

To avoid this conclusion, Plaintiffs include in their responses to UAMPS's and the City Defendants' Motions a bare assertion that the Blackmores provided significant personal funds

---

[78] *Bailes*, 445 F.3d at 1280.

[79] Complaint ¶ 87 at 17, ¶ 90 at 17, ¶¶ 117-122 at 23, ¶ 155 at 27, ¶ 161 at 28-29, ¶ 168 at 30.

[80] *Id*. ¶¶ 39-41 at 10, ¶¶ 45-47 at 11, ¶¶ 55-56 at 12, ¶ 62 at 13, ¶¶ 72-76 at 14-15, ¶¶ 93-96 at 17-18, ¶¶99-100 at 18-19, ¶ 103 at 19, ¶ 105 at 20, ¶¶ 123-124 at 23.

[81] *Id*. ¶¶ 9-10 at 5-6.

[82] *Id*. ¶¶ 157-158 at 28, ¶ 175 at 32.

directly to the construction of the home on Lot 55.[83] This assertion contradicts the Complaint's allegations,[84] as well as Mr. Blackmore's representations in the First Lawsuit.[85] Nevertheless, Plaintiffs indicated they would seek leave to amend their Complaint to clarify the Blackmores' interest.[86] But Plaintiffs have not sought leave to amend their Complaint despite having ample time and opportunity to do so, and despite being aware of the clear deficiencies of their pleading.

Because Plaintiffs' Complaint fails to sufficiently allege the Blackmores' standing to assert their claims, the Blackmores' claims are DISMISSED without prejudice for lack of subject matter jurisdiction.

**The Complaint sufficiently alleges 3D's standing**

The City Defendants argue that 3D lacks standing to pursue its claims because it has no ownership interest in the properties affected by Defendants' alleged conduct.[87] This argument is contrary to the allegations within Plaintiffs' Complaint which, at this time, are accepted as true.[88]

The Complaint contains very few allegations expressly referencing 3D and its interest in the litigation. But the Complaint does allege that 3D is a developer of the Zions Gate subdivision.[89] The Complaint also alleges that 3D, while not a record owner of Lot 55, is an owner of some number of properties in the Zions Gate Estates Phase 2 subdivision.[90] Thus, unlike the Blackmores, 3D's interest in the litigation is not merely that of a shareholder. The

---

[83] Plaintiffs' Memorandum in Opposition to UAMPS' Motion to Dismiss ("Response to UAMPS's Motion") at 6 n.1, docket no. 19, filed Dec. 5, 2022; Plaintiffs' Memorandum in Opposition to Hurricane City, David Imlay and Lance Gifford Rule 12(b)(6) Motion to Dismiss Parties at 13-14, docket no. 28, filed Apr. 19, 2023.

[84] Complaint ¶¶ 9-10 at 5-6.

[85] Motion to Dismiss Defendant Vincent Blackmore in First Lawsuit.

[86] Response to UAMPS's Motion at 6 n.1.

[87] City Defendants' Motion at 10-12.

[88] *Seldin*, 422 U.S. at 501.

[89] Complaint at 2.

[90] *Id.* ¶ 9 at 5.

Complaint further alleges that 3D, as a developer and owner of properties in the Zions Gate

Estates Phase 2 subdivision, suffered an injury in fact caused by Defendants' alleged conduct

which delayed the sales and development of its properties.[91] Such injury is redressable through

the relief sought in the Complaint.[92]

Therefore, the Complaint sufficiently alleges 3D's standing to pursue its claims.

### 3D and Benzer's claims against UAMPS are barred because they were compulsory counterclaims in the First Lawsuit

UAMPS argues that 3D and Benzer's claims against it are barred because they were

compulsory counterclaims in the First Lawsuit.[93] Utah law is used to determine whether the

claims were compulsory counterclaims in the First Lawsuit and, if so, the effect of a failure to

raise such claims.[94]

Rule 13(a)(1) of the Utah Rules of Civil Procedure requires that:

A pleading must state as a counterclaim any claim that--at the time of its service--
the pleader has against an opposing party if the claim: (A) arises out of the
transaction or occurrence that is the subject matter of the opposing party's claim;
and (B) does not require adding another party over whom the court cannot acquire
jurisdiction.[95]

"The purpose of [R]ule 13(a) is to ensure that all relevant claims arising out of a given

transaction are litigated in the same action."[96] A party's failure to raise "available [compulsory]

counterclaims . . . waive[s] the [party's] right to raise those same claims in a separate action."[97]

---

[91] *Id*. at 3-4, ¶ 158 at 28, ¶ 175 at 32.

[92] *Id*. ¶¶ 1-6 at 32-33.

[93] UAMPS's Motion at 13-15.

[94] *Williams v. Stewart Title Co.*, 806 Fed. App'x 625, 628 (10th Cir. 2020) (citing *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs.*, 497 F.3d 1096, 1100 (10th Cir. 2007)).

[95] Utah R. Civ. P. 13(a)(1).

[96] *Raile Family Trust ex rel. Raile v. Promax Dev. Corp.*, 24 P.3d 980, 983 (Utah 2001).

[97] *Id*.

The first step in determining whether 3D and Benzer's claims against UAMPS in this case were compulsory counterclaims in the First Lawsuit is to determine whether the claims had matured "at the time of service" of 3D and Benzer's answer and counterclaim in the First Lawsuit.[98] This question was effectively answered in the First Lawsuit when Judge Ludlow denied 3D and Benzer's motion to consolidate the Second Lawsuit with the First Lawsuit. Judge Ludlow determined that the Second Lawsuit's promissory estoppel claim matured prior to 3D and Benzer's answer in the First Lawsuit.[99]

3D and Benzer's § 1983 claims in this case are nothing more than a repackaging of their affirmative defenses and counterclaims in the First Lawsuit and their Second Lawsuit's promissory estoppel claim. The claims are based on the same allegations that Defendants misrepresented and withheld material information regarding UAMPS's easement on Lot 55 to force Plaintiffs to pay for a self-supporting utility pole after construction of the home on the lot was substantially complete. 3D and Benzer knew or should have known the facts necessary to support these claims at the claims when they served their answer and counterclaim in the First Lawsuit.

The next step in determining whether 3D and Benzer's claims against UAMPS in this case were compulsory counterclaims in the First Lawsuit is to determine whether the claims arise out of the transaction or occurrence that was the subject matter of UAMPS's claims in the First Lawsuit.[100] "Rather than attempt to define the terms 'transaction' and 'occurrence' precisely,

---

[98] Utah R. Civ. P. 13(a)(1).

[99] Order on Motion for Consolidation of Proceedings in First Lawsuit ¶¶ 11-16 at 9-12.

[100] Utah R. Civ. P. 13(a)(1)(A).

most courts have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims may be determined."[101]

> Such factors include: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiffs' claims as well as defendants' counterclaim? and (4) Is there a logical relation between the claim and the counterclaim?[102]

This question was, again, effectively answered in the First Lawsuit when Judge Ludlow determined that the Second Lawsuit's promissory estoppel claim was a compulsory counterclaim in the First Lawsuit.[103]

Although packaged as federal § 1983 claims, the issues of fact and law raised by 3D and Benzer's claims in this case are largely the same as their affirmative defenses and counterclaims in the First Lawsuit and their Second Lawsuit's promissory estoppel claim. In all three lawsuits, the alleged conspiracy and misrepresentation and omission of material information are present and foundational to 3D and Benzer's legal theories. As will be discussed below, res judicata bars 3D and Benzer's claims against UAMPS in this case regardless of the compulsory counterclaim rule.[104] This case would involve the same evidence regarding Defendants' alleged conduct and Plaintiffs' knowledge and conduct. And there is a clear logical relation between the claims in this case and the claims, affirmative defenses, and counterclaims asserted in the First Lawsuit. Indeed, 3D and Benzer asserted nearly identical allegations to support their affirmative defenses and counterclaims in the First Lawsuit and their Second Lawsuit's promissory estoppel claim.

---

[101] *Valley View Angus Ranch, Inc.*, 497 F.3d at 1103-1104 (internal quotations omitted).

[102] *Id*. at 1104 (internal quotations omitted).

[103] Order on Motion for Consolidation of Proceedings in First Lawsuit ¶¶ 11-16 at 9-12.

[104] *Infra* Discussion at 18-21, 24-26.

3D and Benzer's claims against UAMPS in this case arise out of the transaction or occurrence that was the subject matter of UAMPS's claims in the First Lawsuit.

The last step in determining whether 3D and Benzer's claims against UAMPS in this case were compulsory counterclaims in the First Lawsuit is to determine whether the claims would have required adding another party to the First Lawsuit over whom the Utah State Court could not acquire jurisdiction.[105] This step is easily satisfied because 3D and Benzer's claims against UAMPS in this case do not require adding another party. And even if they did, those additional parties would be the other named Defendants in this case. 3D and Benzer make no attempt to argue (and based on the record, could not in good faith argue) that the Utah State Court could not exercise jurisdiction over these Defendants.

Therefore, 3D and Benzer's claims against UAMPS in this case were compulsory counterclaims in the First Lawsuit. Because 3D and Benzer failed to raise these claims as counterclaims in the First Lawsuit, 3D and Benzer waived their right to raise the claims in a separate action.[106] The claims are barred.

### Claim preclusion bars 3D and Benzer's claims against UAMPS, but not 3D and Benzer's claims against the City Defendants

UAMPS and the City Defendants argue that the final judgments entered in the First Lawsuit and Second Lawsuit bar 3D and Benzer's claims under the doctrine of claim preclusion.[107] "Under 28 U.S.C. § 1738, the preclusive effect of a state judgment is governed by the rules of preclusion of that state."[108] Therefore, Utah law governs whether claim preclusion bars 3D and Benzer's claims.

---

[105] Utah R. Civ. P. 13(a)(1)(B).

[106] *Raile Family Trust ex rel. Raile*, 24 P.3d at 983.

[107] UAMPS's Motion at 16-17; City Defendants' Motion at 4-10.

[108] *Valley View Angus Ranch, Inc.*, 497 F.3d at 1100.

**Legal Standards**

"Claim preclusion is premised on the principle that a controversy should be adjudicated only once."[109] A three-part test is used to determine if claim preclusion bars a claim:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.[110]

"The second prong is often the most contested element of the claim preclusion analysis."[111] And Utah courts apply the "transactional test" to determine if the claims are the same or could and should have been raised in the first action.[112]

"Under this formulation, rather than resting on the specific legal theory invoked, claim preclusion generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims."[113] Thus, "claims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction."[114]

> [D]eterminations of whether a certain factual grouping constitutes a transaction or series of transactions should be made pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.[115]

"[N]o single factor is determinative."[116]

---

[109] *Gilmor v. Family Link, LLC*, 284 P.3d 622, 626 (Utah 2012) (internal quotations omitted).

[110] *Id*. (internal quotations omitted).

[111] *Id*.

[112] *Id*. at 627.

[113] *Id*. (internal quotations and punctuation omitted).

[114] *Id*. (internal quotations and punctuation omitted)

[115] *Id*. (internal quotations omitted).

[116] *Id*. (internal quotations omitted).

**Claim preclusion bars 3D and Benzer's claims against UAMPS**

Regarding 3D and Benzer's claims against UAMPS, the application of claim preclusion is straightforward and clear cut. UAMPS, 3D, and Benzer are parties to this case, and were parties to the First Lawsuit and Second Lawsuit. And although other parties have been named among the three lawsuits, this has no effect on the application of claim preclusion to 3D and Benzer's claims against UAMPS in this case.[117] The first prong of claim preclusion is satisfied.

Regarding the second prong, as discussed,[118] 3D and Benzer's § 1983 claims in this case are nothing more than a repackaging of their affirmative defenses and counterclaims in the First Lawsuit and their Second Lawsuit's promissory estoppel claim. The claims are based on the same allegations that Defendants misrepresented and withheld material information regarding UAMPS's easement on Lot 55 to force Plaintiffs to pay for a self-supporting utility pole after construction of the home on the lot was substantially complete. The alleged facts are related in time, space, origin, and motivation. And the same alleged conspiracy and misrepresentations and omissions of material information are present and foundational to 3D and Benzer's legal theories in all three lawsuits. 3D and Benzer's claims against UAMPS in this case arise from the same transaction as the First Lawsuit and Second Lawsuit, and are the same as those brought or that could have been brought in the First Lawsuit and Second Lawsuit. The second prong of claim preclusion is satisfied.

The third prong of claim preclusion is also satisfied because both the First Lawsuit and Second Lawsuit resulted in a final judgment on the merits. UAMPS was successful on its claims

---

[117] *Wing v. Hulet*, 684 P.2d 314, (Idaho Ct. App. 1984) ("[C]laim preclusion does not require that there be an identity of all parties in both lawsuits. Rather, it simply requires that the plaintiff whose claim may be merged and the defendant whose defense may be barred in the first lawsuit also be the parties affected by the same claim in the second suit.").

[118] *Supra* Discussion at 15-18.

against 3D and Benzer in the First Lawsuit. And 3D and Benzer's affirmative defense and counterclaims in the First Lawsuit and their promissory estoppel claim in the Second Lawsuit were denied and dismissed.

Because all three prong of claim preclusion are satisfied regarding 3D and Benzer's claims against UAMPS, the claims are barred.

**Claim preclusion does not bar 3D and Benzer's claims against the City Defendants**

Application of claim preclusion to 3D and Benzer's claims against the City Defendants in this case is also straightforward and clear cut (although leading to a different result than the claims against UAMPS). The City Defendants were not parties to the First Lawsuit or their privies. 3D and Benzer did attempt to allocate fault to Hurricane City based on the alleged conduct of its employee, David Imlay. But neither Hurricane City nor Mr. Imlay (or Mr. Gifford) were made parties to the First Lawsuit. Therefore, the First Lawsuit cannot serve as a basis for barring 3D and Benzer's claims against the City Defendants under claim preclusion.

Hurricane City was, however, a named defendant in Second Lawsuit. Mr. Imlay and Mr. Gifford, as employees of Hurricane City acting within the scope of their employment, are privies of Hurricane City in the Second Lawsuit.[119] 3D and Benzer make no attempt to argue to the contrary. Thus, the first prong of claim preclusion is satisfied regarding the Second Lawsuit.

As discussed in relation to UAMPS,[120] the second prong of claim preclusion is also satisfied by the Second Lawsuit. 3D and Benzer's § 1983 claims in this case and their promissory estoppel claim in the Second Lawsuit are based on the same allegations of conspiracy

---

[119] *C.f. United States v. Rogers*, 960 F.2d 1501, 1509 (10th Cir. 1992) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.") (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-403 (1940)).

[120] *Supra* Discussion at 15-21.

and misrepresentation and omission of material information. The alleged facts are related in time, space, origin, and motivation. 3D and Benzer's claims against the City Defendants in this case arise from the same transaction as the Second Lawsuit, and are the same as those brought or that could have been brought in the Second Lawsuit.

The third prong of claim preclusion is, however, where the Second Lawsuit fails to act to bar 3D and Benzer's claims against the City Defendants. The Second Lawsuit resulted in a final judgment on the merits, but only as to 3D and Benzer's claim against UAMPS. The Second Lawsuit did not result in a final judgment on the merits as to Hurricane City. Instead, 3D and Benzer voluntarily dismissed their claim against Hurricane City, and Hurricane City's motion to dismiss the claim was determined moot.[121]

"[A] voluntary dismissal without prejudice renders the proceedings a nullity and leaves the parties as if the action had never been brought."[122] "[A] plaintiff who moves for voluntary dismissal receives just that which is sought—the dismissal of [the] action and the right to bring a later suit on the same cause of action, without adjudication of the merits."[123] Therefore, because 3D and Benzer voluntarily dismissed Hurricane City from the Second Lawsuit, the Second Lawsuit cannot serve as a basis for barring 3D and Benzer's claims against the City Defendants under claim preclusion.

The City Defendants attempt to avoid this result through reliance on a recent Utah Court of Appeals' opinion: *Raser Techs., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*[124] However, that case is distinguishable. In *Raser Techs., Inc.*, the Utah Court of Appeals stated

---

[121] Notice of Dismissal Pursuant to Rule 41(a) in Second Lawsuit; Final Judgment in Second Lawsuit.

[122] *Barton v. Utah Transit Auth.*, 872 P.2d 1036, 1039 (Utah 1994) (internal quotations and punctuation omitted).

[123] *Id.* (internal quotations omitted).

[124] 506 P.3d 1204 (Utah Ct. App. 2022).

that "[t]he claim preclusion branch of res judicata does not require that *every claim* be resolved on the merits but that *the suit* be resolved on the merits."[125] "In other words, 'when there has been an adjudication, it becomes res judicata as to those issues which were either tried and determined, or upon all issues which the party had a fair opportunity to present and have determined in the other proceeding.'"[126] The Court of Appeals then applied claim preclusion to bar the plaintiff's claims against the defendant even though those claims had been voluntarily dismissed in a prior lawsuit.[127] But this was because other claims against *the same defendant* in the prior lawsuit resulted in a final judgment on the merits.[128] The plaintiff's decision to voluntarily dismiss some of its claims against the defendant did not "somehow prevent the operation of res judicata" when a final judgment on the merits entered for its other claims against that defendant.[129]

The circumstances in this case are different. 3D and Benzer voluntarily dismissed Hurricane City from the Second Lawsuit in its entirety. Hurricane City was not party to the Second Lawsuit when final judgment on the merits entered against 3D and Benzer and in favor of UAMPS. There was no final judgment on the merits for the suit 3D and Benzer brought against Hurricane City.

Therefore, claim preclusion does not bar 3D and Benzer's claims against the City Defendants.

---

[125] *Id*. at 1208 (emphasis in original).

[126] *Id*. (quoting *Jacobsen v. Jacobsen*, 703 P.2d 303, 305 (Utah 1985)).

[127] *Id*. at 1209-1211.

[128] *Id*.

[129] *Id*. at 1210-1211.

**Issue preclusion bars 3D and Benzer's claims against all Defendants**

UAMPS and the City Defendants argue that the final judgments entered in the First Lawsuit and Second Lawsuit bar 3D and Benzer's claims under the doctrine of issue preclusion.[130] "Under 28 U.S.C. § 1738, the preclusive effect of a state judgment is governed by the rules of preclusion of that state."[131] Therefore, Utah law governs whether issue preclusion bars 3D and Benzer's claims.

"[I]ssue prelusion corresponds to the facts and issues underlying causes of action."[132] It "prevents parties or their privies from relitigating *facts and issues* in the second suit that were fully litigated in the first suit."[133]

> Issue preclusion applies only when the following four elements are satisfied: (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.[134]

Issue preclusion differs from claim preclusion because identity of all parties is not an element of issue preclusion—the focus is only on "the party against whom issue preclusion is asserted."[135] And "unlike claim preclusion, where the court may consider whether a claim could and should have been raise, issue preclusion exists to prevent *previously litigated* issues from being relitigated."[136]

---

[130] UAMPS's Motion at 17-19; City Defendants' Motion at 10.

[131] *Valley View Angus Ranch, Inc.*, 497 F.3d at 1100.

[132] *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1163 (Utah 2012) (internal quotations omitted).

[133] *Id*. at 1164 (internal quotations omitted; emphasis in original).

[134] *Id*. (internal quotations omitted).

[135] *Id*. (internal quotations omitted).

[136] *Id*. (internal quotations omitted; emphasis in original)

Each element of issue preclusion is satisfied by the First Lawsuit, and issue preclusion acts to bar 3D and Benzer's claims against all Defendants. The first element is satisfied because 3D and Benzer were both parties to the First Lawsuit. The second and third elements are satisfied because 3D and Benzer raised with their affirmative defenses and counterclaims in the First Lawsuit the identical issues regarding Defendants' alleged bad faith and abuse of power through conspiracy and misrepresentation and omission of material information.[137] And these issues were completely, fully, and fairly litigated and adjudicated in the First Lawsuit.

Judge Ludlow dismissed 3D and Benzer's civil conspiracy counterclaim for failure to state a claim.[138] And on summary judgment, Judge Ludlow dismissed 3D and Benzer's counterclaims for declaratory judgment and permanent injunction, and denied their estoppel defense.[139] Judge Ludlow expressly concluded that UAMPS (and Mr. Imlay) did not make any inconsistent admission, statements, or acts regarding the home's encroachment upon UAMPS's easement at Lot 55.[140] Judge Ludlow further concluded that 3D and Benzer's reliance on any representation of UAMPS (or Mr. Imlay) was unreasonable because 3D and Benzer had constructive knowledge and inquiry notice of UAMPS's easement.[141] And Judge Ludlow rejected 3D and Benzer's other affirmative defenses by granting judgment in favor of UAMPS and against 3D and Benzer on UAMPS's claims for declaratory judgment, trespass, and permanent injunction.[142]

---

[137] Amended Answer and Counterclaim in First Lawsuit ¶¶ 5-6 at 8-9, ¶ 12-13 at 10-11.

[138] Order Dismissing Civil Conspiracy Claim in First Lawsuit.

[139] Findings of Fact and Conclusions of Law (Motion for Summary Judgment on Defendants' Amended Counterclaim) in First Lawsuit.

[140] *Id*. ¶¶ 14-26 at 16-22.

[141] Findings of Fact and Conclusions of Law (Motion for Summary Judgment on Defendants' Eighth Affirmative Defense) in First Lawsuit.

[142] Final Judgment in First Lawsuit.

The fourth element of issue preclusion is also satisfied because final judgment on the merits entered in the First Lawsuit.[143] Therefore, issue preclusion bars 3D and Benzer from relitigating these issues in this case. And because 3D and Benzer's § 1983 claims in this case are each founded and premised on these barred issues of bad faith and abuse of power through conspiracy and misrepresentation and omission of material information,[144] 3D and Benzer's claims are barred against all Defendants.

**ORDER**

IT IS HEREBY ORDERED that UAMPS's and the City Defendants' Motions[145] are GRANTED. The Blackmores' claims are DISMISSED without prejudice for lack of subject matter jurisdiction. 3D and Benzer's claims are DISMISSED with prejudice.

The Clerk is directed to close the case.

Signed September 28, 2023.

BY THE COURT

David Nuffer
United States District Judge

---

[143] *Id.*

[144] Complaint ¶¶ 113-174 at 21-31.

[145] Docket no. 14, filed Oct. 11, 2022; docket no. 26, filed Feb. 15, 2023.